**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **B.A.M.A.,** | : | |
| | : | |
| **Petitioner,** | : | **CASE NO:** |
| v. | : | **7:26-cv-95–WLS-ALS** |
| | : | |
| **WARDEN, IRWIN COUNTY** | : | |
| **DETENTION CENTER,** *et al.,* | : | |
| | : | |
| **Respondents.** | : | |
| _____ | : | |

## ORDER

Before the Court is Petitioner's Emergency Motion to Enforce Judgment, for Prospective Order to Show Cause, and for Immediate Release or Interim Enforcement Relief (Doc. 11) ("Motion to Enforce"), filed on June 3, 2026. Therein, Petitioner moves the Court to enforce its previous Order (Doc. 9) ("Bond Hearing Order") entered May 13, 2026, which granted Petitioner's Habeas Petition (Doc. 1) to the extent the Court ordered Respondents to provide Petitioner with a bond hearing. Petitioner contends that Respondents violated the Court's Order by failing to provide Petitioner with a constitutionally valid bond hearing. For the reasons discussed below, the Motion is **DENIED**.

## I.    PROCEDURAL BACKGROUND

On April 3, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 1) under 28 U.S.C. § 2241 challenging the constitutionality of his detention because Respondents failed to provide him with a bond hearing and the opportunity for pre-removal release. On May 11, 2026, Petitioner filed an Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 7) ("TRO Motion"), in which he sought a temporary restraining order ("TRO") granting him immediate release from Respondents' custody, or in the alternative, an order requiring Respondents to provide him with a pre-deprivation bond hearing within forty-eight hours. Petitioner further sought a TRO to enjoin Respondents from transferring Petitioner out of this District or deporting him during the pendency of the underlying proceedings.

1

On May 13, 2026, the Court entered the Bond Hearing Order granting, in part, Petitioner's Petition, finding that Petitioner was detained under 8 U.S.C. § 1226(a); and, therefore, is not subject to mandatory detention under § 1225. That Order specifically provided:

> The bond hearing shall comport with all requirements of due process, including the requirement that the Department of Homeland Security shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk. *See J.G. v. Warden, Irwin Cnty. Det. Ctr.*, 501 F. Supp. 3d 1331, 1335 (M.D. Ga. 2020). Once a bond hearing is provided, Petitioner will have received the remedy that the Court is authorized to order, and Petitioner should file a notice of dismissal.

(Doc. 9 at 3). By Order (Doc. 10) entered May 13, 2026, the Court denied, as moot, Petitioner's TRO Motion.

After entry of the Bond Hearing Order, the Executive Office of Immigration Review ("EOIR") held a bond hearing on May 20, 2026, in Atlanta, Georgia. (Doc. 11-3). Immigration Judge Amy Fairchild Haer ("IJ Haer") found that Petitioner was a flight risk, and denied his request for a bond. (*Id.*).

On June 3, 2026, Petitioner filed the instant Motion to Enforce, seeking enforcement of this Court's Bond Hearing Order. Respondents' Response to Motion to Enforce (Doc. 12) was filed June 5, 2026, and Petitioner filed a timely Reply (Doc. 13) on June 8, 2026. Thus, the Parties having submitted their briefs, and the Motion to Enforce is fully briefed and ripe for ruling.

## II.    FACTUAL BACKGROUND

Petitioner is a 31-year-old noncitizen who states he has resided continuously in the United States since his lawful inspection and parole on August 19, 2022. (Doc. 1 ¶ 30). Petitioner states he has no criminal history, no prior arrests, and no history of immigration violations, and has complied with all requirements imposed by immigration authorities since his entry. (*Id.* ¶ 32). On or about January 28, 2026, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") while parked in his vehicle in a Walmart parking area in Charlotte, North Carolina, where he was working as a delivery driver. Defendant has a valid employment authorization document and a valid driver's license. (*Id.* ¶ 34). Petitioner is currently detained at the Irwin Detention Center in Ocilla, Georgia. (*Id.*). The Department of

Homeland Security ("DHS") issued Petitioner a Notice to Appear, placing him in removal proceedings. (*Id.* ¶ 35).

Petitioner is married to a U.S. citizen, has lived at the same Charlotte, North Carolina, address with his spouse since 2024, is the father of a 21-month-old U.S. citizen child, has a pending I-130 petition sponsored by his spouse,[1] is compliant with immigration reporting, and has no history of absconding. (Doc. 11 at 6).

## III. BOND HEARING

Consistent with the Bond Hearing Order, during the bond hearing Petitioner's counsel reminded IJ Haer that DHS had the burden to prove by clear and convincing evidence that Petitioner was a flight risk or a danger to the community. (Unofficial Tr. Doc. 11-2 at 4, 5, 6). In her oral ruling, IJ Haer, stated:

> The court finds that by taking administrative notice of the removal record, the court does find that respondent was ordered removed on May 14th, 2026. The court finds that the Department of Homeland Security has met their burden to show that [B.A.M.A.][2] is a flight risk. The court does acknowledge that there are positive factors here. However, the risk of flight due to having a pending removal order that the court acknowledges is under appeal, but there is no pending hearing before any court. Therefore, the flight risk is drastic, dramatic, however you wish to refer to it. It is large. That outweighs all of the positive factors listed by [B.A.M.A.'s] counsel. Therefore, bond is denied.

(Doc. 11-2 at 6). In her written order denying Petitioner's request for a bond, IJ Haer stated:

> The Court weighs the positive and negative factors in [B.A.M.A.'s] case to determine his eligibility for release. See Guerra, 24 I&N Dec. at 40. [B.A.M.A.] is not a danger to persons, property, or national security. [B.A.M.A.] does constitute a flight risk. He has been ordered removed. Despite having a pending appeal of that removal order, having a removal order constitutes a dramatic flight risk.

(Doc. 11-3 at 4). Unfortunately, in the introductory portion of her written order and contrary to her oral ruling and the Bond Hearing Order, IJ Haer also states that "[B.A.M.A.] carries the

---

[1] The purpose of an I-130 petition is "to establish that there is a legal relationship between the petitioner and the beneficiary of the I–130, such that the beneficiary is entitled to apply for a change or adjustment of status based on that legal relationship. *Jayoun Min Sheehan v. U.S. Atty. Gen.*, 418 F. App'x 842, 844 (11th Cir. 2011).

[2] In the proceeding before IJ Haer, Petitioner B.A.M.A. is the respondent. For the sake of clarity in this Order, the Court has changed references to "respondent" in the proceedings before IJ Haer to "B.A.M.A" to prevent confusion with Respondents in this case.

burden of demonstrating: (1) he is not a danger to the community; and (2) he is not a flight risk." (Doc. 11-3 at 3).

In the Motion to Enforce Petitioner argues that the bond hearing failed to comply with the Bond Hearing Order in four ways: (1) DHS presented no individualized, case-specific evidence to prove by clear and convincing evidence that he was a flight risk, (2) IJ Haer treated the non-final removal order as effectively dispositive, (3) IJ Haer did not put the burden on DHS, and (4) neither IJ Haer nor DHS meaningfully addressed less restrictive alternatives to detention.

DHS responds that the bond hearing complied with the Bond Hearing Order, 8 U.S.C. § 1226(e) precludes this Court from reviewing the merits of IJ Haer's decision, Petitioner failed to exhaust his administrative remedies, and that IJ Haer properly considered competing factors, acknowledged Petitioner's equities, found he was not a danger to the community, but that the removal order created a substantial flight risk.

In his Reply, Petitioner refers to the language in the written order putting the burden of proof on Petitioner, and, for the first time, argues that EOIR regulations make the written custody order the operative decision. (Doc. 13 at 4–5).

## IV. PRELIMINARY ISSUES

### A. Habeas Corpus Legal Standard

"[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). 28 U.S.C. § 2241 confers upon district courts the power to grant writs of habeas corpus to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." This power extends to challenges brought by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91 (2025).

### B. Jurisdiction

Respondents argue that 8 U.S.C. § 1226(e) expressly precludes the Court from reviewing IJ Haer's bond decision. (Doc. 12 at 2–3). Indeed, "§ 1226(e) precludes an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). However, this express

preclusion is cabined in the immediate next sentence in *Jennings*, "§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail.'" *Id.* (quoting *Demore*, 538 U.S. at 517). Where detainees challenged "the constitutionality of the entire statutory scheme under the Fifth Amendment," § 1226(e) did not preclude their claims. *Id.* Here, Petitioner alleges IJ Haer violated his due process rights and this Court's Bond Hearing Order by putting the burden of proof of him rather than DHS.

Further, on the jurisdictional issue, "[c]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991). The Court ordered Respondents to "provide Petitioner with a bond hearing . . . under § 1226(a)(2) and the applicable regulations." (Doc. 9 at 3). In so ordering, the Court expected Respondents would hold a bond hearing that comports with due process, "including the requirement that the Department of Homeland Security shall bear the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk." (*Id.*). Because Petitioner alleges that Respondents did not, the Court has jurisdiction to review these allegations and, if needed, enforce its Order.

## V.    DISCUSSION

The only issue raised by Petitioner over which this Court has jurisdiction to review is whether IJ Haer properly placed the burden of proof on DHS rather than Petitioner. Absent the unfortunate reference in the written order placing the burden of proof on Petitioner, it is clear that Petitioner is asking this Court to review IJ Haer's decision on the merits. His arguments that (1) DHS presented no individualized, case-specific evidence to prove by clear and convincing evidence that he was a flight risk, (2) IJ Haer treated the non-final removal order as effectively dispositive, and (3) neither IJ Haer nor DHS meaningfully addressed less restrictive alternatives to detention, are clearly questions within IJ Haer's discretion and outside this Court's jurisdiction. If Petitioner disagrees with how IJ Haer weighed the evidence, that it was improper for her to consider a non-final removal order as dispositive, or that she was required to consider less restrictive alternatives, Petitioner's avenue for relief was to appeal her decision to the Board of Immigration Appeals.

Petitioner contends that IJ Haer's oral decision stating that DHS met its burden of proof is insufficient to cure the facial defect in the written order because (1) the oral ruling

does not reference the clear and convincing standard, and (2) EOIR regulation 8 C.F.R. § 1003.19(f) "makes the written form the operative custody record." (Doc. 13 at 6). This regulation provides:

> The determination of an Immigration Judge with respect to custody status or bond redetermination shall be entered on the appropriate form at the time such decision is made and the parties shall be informed orally or in writing of the reasons for the decision. An appeal from the determination by an Immigration Judge may be taken to the Board of Immigration Appeals pursuant to § 1003.38.

8 C.F.R. § 1003.19(f). Nothing in the cited regulation supports Petitioner's contention that the written order overrides IJ Haer's oral ruling. Nor does Petitioner cite to any case law in support of such position. If Petitioner or Respondent wished to have the written order clarified, such request is properly addressed to IJ Haer.

Petitioner's counsel reminded IJ Haer that DHS has the burden of proof by clear and convincing evidence multiple time during the bond hearing and IJ Haer's oral ruling acknowledged that DHS had met its burden. Therefore, the Court finds that the bond hearing complied with the requirements of the Bond Hearing Order and properly placed the burden of proof on DHS to prove by clear and convincing evidence that Petitioner was a flight risk.

Accordingly, Petitioner's Emergency Motion to Enforce Judgment, for Prospective Order to Show Cause, and for Immediate Release or Interim Enforcement Relief (Doc. 11) is **DENIED**.

**SO ORDERED**, this 25th day of June 2026.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**